IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CASTLE MORTGAGE COMPANY, INC., | § § § | |
| Plaintiff/Counter-Defendant, | § § § | |
| V. | § § § | |
| THE BANK OF NEW YORK MELLON TRUST COMPANY, NATIONAL ASSOCIATION, fka The Bank of New York Trust Company, N.A., as Successor to JPMorgan Chase Bank, N.A. as Trustee for Residential Asset Mortgage Products Inc., Mortgage Asset-Backed Pass-Through Certificates Series 2005-RP2 c/o PHH Mortgage Corporation, | § § § § § § § § § § § § § | No. 3:21-cv-3172-M-BN |
| Defendant/Counter-Plaintiff. | § | |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

This case has been referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from Senior District Judge Barbara M. G. Lynn. *See* Dkt. No. 7.

Defendant/Counter-Plaintiff The Bank of New York Mellon Trust Company, National Association, formerly known as The Bank of New York Trust Company, N.A., as Successor to JPMorgan Chase Bank, N.A. as Trustee for Residential Asset Mortgage Products Inc., Mortgage Asset-Backed Pass-Through Certificates Series 2005-RP2 ("BNYM") has filed a Motion for Attorney Fees, *see* Dkt. No. 33, asking

"that the Court award it its attorney fees in the total amount of $20,121.50, plus additional amounts as specified in the event of an appeal, to be recovered from Plaintiff solely as a further obligation owed by it under the Note and Deed of Trust and not for money damages," *id.* at 1-2.

Plaintiff/Counter-Defendant Castle Mortgage Company, Inc. has not responded, and its deadline in which to do so has passed.

The undersigned now enters these findings of fact, conclusions of law, and recommendation that the Court should grant the Motion for Attorneys' Fees and Costs [Dkt. No. 33].

## Background

As background, BNYM explain that it

> filed its Second Motion for Summary Judgment on July 21, 2022. (ECF Doc. 16-17.) On December 12, 2022, the United States Magistrate Judge entered his Amended Findings, Conclusion, and Recommendation (the "Amended Findings"). (ECF. No. 28.) On February 6, 2023, the Court accepted the Amended Findings, granted the Motion for Summary Judgment, and entered Judgment that authorizing BNYM to foreclose on the subject real property and recover its attorney fees in an amount to be determined by post-judgment motion. (ECF Docs. 30-31.)
> BNYM now presents its request for award of attorney fees pursuant to the Court's Order and Final Judgment, the Note, Deed of Trust, and Federal Rule of Civil Procedure 54(d)(2).

Dkt. No. 34 at 2 of 4.

BNYM contends that its "attorney fees are recoverable from Plaintiff under the terms of the Note and Security Instrument agreement as an additional portion of the debt owed to Plaintiff and secured by the Deed of Trust on the Property." *Id.* (citing Dkt. No. 18 at 17 ¶9; Dkt. No. 28; Dkt. No. 31).

-2-

The Court previously accepted the Amended Findings, Conclusions, and Recommendation, *see* Dkt. No. 30, in which the undersigned explained that "BNYM seeks attorneys' fees under Texas Civil Practice & Remedies Code § 38.001 and under the Deed of Trust 'in an amount to be determined by subsequent motion practice'"; that, "'[u]nder Texas law, a party is permitted to recover attorney's fees only if they are authorized by contract or by statute,' *Bank One, Texas, N.A. v. Taylor*, 970 F.2d 16, 35 (5th Cir. 1992)"; that "[t]he Deed of Trust provides that 'Borrower on demand shall pay all costs and expenses of Beneficiary and Trustee … in any such action or proceeding in which Beneficiary or Trustee may appear by virtue of being made a party defendant or otherwise … including, but not limited to … any suit brought by Beneficiary to foreclose this Deed of Trust.' *See* Dkt. No. 23, Ex. A-2 ¶ 9"; that "BNYM has not provided any documentation to support its request for attorneys' fees, so the undersigned cannot determine what amount of fees would be reasonable"; and that "[t]he undersigned recommends that the Court consider the issue of attorneys' fees post-judgment under Federal Rule of Civil Procedure 54(d)(2)," Dkt. No. 28 at 15-16 (cleaned up).

**Legal Standards**

Where, as here, a party seeks to recover attorneys' fees as authorized by contract,

> [r]easonable attorneys' fees are determined through a two-step process. The district court must first calculate the lodestar – the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work. The lodestar is presumed reasonable, but the court may then enhance or decrease it after considering the twelve

> *Johnson* factors. [T]he most critical factor in determining a reasonable fee 'is the degree of success obtained.'
>
> [T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates. But once calculated, the party seeking modification of the lodestar under the *Johnson* factors bears the burden.

*Fessler v. Porcelana Corona De Mex., S.A. DE C.V.*, 23 F.4th 408, 415-16 (5th Cir. 2022) (cleaned up).

And the Court also may use its own expertise and judgment to make an appropriate independent assessment of the hourly rates charged for the attorneys' services. *See Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004); *Vanliner Ins. Co. v. DerMargosian*, No. 3:12-cv-5074-D, 2014 WL 1632181, at *2 (N.D. Tex. Apr. 24, 2014) (noting that the Court is an expert on the reasonableness of attorneys' fees). Further, "[i]f a party does not object to particular billing entries as inadequately documented, the court is not obligated *sua sponte* to sift through fee records searching for vague entries or block billing. It is a common practice for courts to address only those potentially inadequate entries brought to the court's attention." *Hoffman v. L & M Arts*, No. 3:10-cv-953-D, 2015 WL 3999171, at *5 (N.D. Tex. July 1, 2015).

The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the legal issues; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney as a result of taking the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or other circumstances; (8) the monetary amount

involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) whether the case is undesirable; (11) the nature and duration of the professional relationship with the client; and (12) awards in similar cases. *See Johnson v. Ga. Highway Express*, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974), *overruled on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 90 (1989).

The undersigned recognizes that the analysis set forth above, and particularly the interplay of the lodestar analysis and the *Johnson* factors, may have been called into question by the United States Supreme Court's decision in *Perdue v. Kenny A.*, 559 U.S. 542 (2010). *See Perdue*, 559 U.S. at 552-53; *S&H Indus., Inc. v. Selander*, No. 3:11-cv-2988-M-BH, 2013 WL 6332993, at *2-*3 (N.D. Tex. Dec. 5, 2013).

But the United States Court of Appeals for the Fifth Circuit, in a subsequent published opinion, rejected the argument "that *Perdue* clearly disfavors applying the *Johnson* factors to determine a fee award and instead requires the use of only the lodestar." *Combs v. City of Huntington, Tex.*, 829 F.3d 388, 393 (5th Cir. 2016). The Court of Appeals explained that

> [w]e agree that *Perdue* requires courts to first calculate the lodestar; indeed, this has long been our practice. *See, e.g., League of United Latin Am. Citizens No. 4552 (LULAC) v. Roscoe Ind. Sch. Dist.*, 119 F.3d 1228, 1232 (5th Cir. 1997) ("The method by which the district court calculates an attorneys' fees award is well established. The district court first calculates the 'lodestar.'"). But *Perdue* does not, as Combs contends, make it impermissible to then consider any relevant *Johnson* factors. *Perdue* cautions against the sole use of the *Johnson* factors to calculate a reasonable attorney's fee but nowhere calls into question the use of relevant *Johnson* factors to make this determination. Indeed, *Perdue* expressly allows adjustments "in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." 559 U.S. at

> 554....
>     And though the lodestar is presumed reasonable, it may be adjusted where it "does not adequately take into account a factor that may be properly considered in determining a reasonable fee." *Perdue*, 559 U.S. at 554.... *Perdue*, consistent with the Court's frequent pronouncements, explains that lodestar enhancements are to be rare....
>     In sum, the district court should begin by calculating the lodestar: the reasonable hours expended multiplied by a reasonable rate. The district court may then determine whether any other considerations counsel in favor of enhancing or decreasing the lodestar. In light of the "strong presumption" that the lodestar represents a sufficient fee, enhancements must necessarily be rare. *Perdue*, 559 U.S. at 553-54.

*Id.* at 393-95; *see also Rodney v. Elliot Sec. Sols., L.L.C.*, 853 F. App'x 922, 924 (5th Cir. 2021) (per curiam).

*Perdue*, then, did not change the proper method for calculating attorneys' fees awards in the Fifth Circuit. The analysis below will consider the necessary factors when determining the appropriate amount of attorneys' fees to be awarded.

And, in the end, this Court "must provide a reasonably specific explanation for all aspects of a fee determination." *Portillo v. Cunningham*, 872 F.3d 728, 741 (5th Cir. 2017) (cleaned up). So "rulings on fee awards need not be so excruciatingly explicit that those decisions consume more paper than did the cases from which they arose." *Saldivar v. Austin Indep. Sch. Dist.*, 675 F. App'x 429, 432-33 (5th Cir. 2017) (per curiam) (cleaned up). Instead, this Court's "analysis [must be] complete enough for [the Fifth Circuit] to review whether the [C]ourt has used proper factual criteria in exercising its discretion to fix just compensation." *Id.* (cleaned up).

## Analysis

BNYM reports that it "incurred $20,121.50 in reasonable and necessary attorney fees in defending Plaintiff's claims and prosecuting its counterclaim to

enforce its interest in certain real property as a result of Plaintiff's default of under the Note and Deed of Trust agreement between the parties," relying on the Declaration of Mark D. Cronenwett attached as Exhibit A to its motion. Dkt. No. 34 at 3 of 4. BNYM "requests an award of attorney fees in the amount of $20,121.50, that it has incurred in enforcing its interest in the subject property." *Id.*

Mr. Cronenwett's declaration explains:

> 2. I am an attorney at Mackie Wolf Zientz & Mann, P.C. ("MWZM"), counsel for Defendant/Counter-Plaintiff The Bank of New York Mellon Trust Company, National Association, fka the Bank of New York Trust Company N.A., as Trustee, as Successor to JPMorgan Chase Bank, N.A. as Trustee for Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certificates Series 2005 RP2 c/o PHH Mortgage Corporation (hereinafter "BNYM" or "Defendant").
>
> 3. I am an attorney licensed to practice in the State of Texas and am a member of the bar of the United States District Court for the Northern District of Texas. I am the Director of Litigation at MWZM. I am in good standing with respect to the State Bar of Texas. ….
>
> 5. MWZM was retained by BNYM to defend it against Plaintiff's claims and to file a judicial foreclosure action to enforce its interest in certain real property as a result of a default under a loan. The legal professionals of MWZM with whom I worked in providing these services are at all relevant times attorneys licensed by the State of Texas, in good standing and experienced in the areas of business, real estate, and commercial litigation practice. Without waiving the attorney-client privilege, the subject matter of the counsel and representation provided to BNYM by MWZM legal professionals included, but was not limited to: removal of the action to this Court; review and analysis of the loan documents at issue; review and analysis of the history of this matter; preparation and filing of the original answer and counterclaim; drafting the motion for summary judgment and related filings; conducting legal research; conferring with BNYM's mortgage servicer regarding all of these items and this matter generally. These activities are set forth in chronological order by name and date on the invoices included with the motion as Exhibit A-2. The hours set forth for each activity were actually expended on the topics stated.
>
> 6. The reasonable incurred attorneys' fees are $20,121.50 incurred for 102.2 hours in defending BNYM and prosecuting its claims

>     to enforce its interest in certain real property as a result of the default
>     … under the loan agreement between the parties. The hourly rates
>     charged are $275.00 per hour for attorneys, $300.00 per hour for senior
>     attorneys, and $85.00 and $95.00 per hour for paralegals and legal
>     assistants.
>         7. I have become familiar with the legal services necessary to
>     handle claims based on and the reasonable charges for such legal
>     services in the United States District Court for the Southern District of
>     Texas and within the State of Texas. In considering reasonable
>     attorneys' fees in this case, I have considered the time and labor
>     involved; the difficulty of the issues presented; the experience,
>     reputation, and ability of the attorneys involved in pursuing the claims;
>     the skills requisite to properly conduct the case; customary charges of
>     the Bar and awards in similar cases; and the amount in controversy.
>         8. Based upon my knowledge and experience with similar
>     litigation in the state and federal courts in Texas over the last ten years,
>     and applying the facts and factors set out above, it is my opinion that
>     the hourly rate of up to $300.00 per hour for attorneys and $95.00 per
>     hour for paralegals and legal assistants are reasonable and customary,
>     and the sum of $20,007.50 is reasonable attorneys' fees for representing
>     BNYM with regard to defending against Plaintiff's claims and
>     protecting its interest in certain real property as a result of a default …
>     under the loan agreement.

Dkt. No. 34-1 at 2-4 of 45.

Based on Mr. Cronenwett's declaration and the undersigned's own knowledge of hourly rates in this community for similar work, the undersigned finds that the requested rates are reasonable and within the market rate for attorneys and legal support staff handling this type of litigation in the Dallas area.

Specifically, the Court should award fees based on rates of $275.00 per hour for attorneys, $300.00 per hour for senior attorneys, and $85.00 and $95.00 per hour for paralegals and legal assistants.

Mr. Cronenwett's declaration and the records attached to it include a narrative description of the work done and the number of hours that it took to complete the

work. *See* Dkt. No. 34-1 at 8-45 of 45. But in this same declaration, Mr. Cronenwett states that an amount of $20,007.50 would be a reasonable fee for the services provided. *See id.* at 4 of 45. But Mr. Cronenwett also attests that "[t]he reasonable incurred attorneys' fees are $20,121.50 incurred for 102.2 hours in defending BNYM and prosecuting its claims to enforce its interest in certain real property as a result of the default … under the loan agreement between the parties." *Id.* at 3 of 45. The $20,007.50 reference appears to be a typographical error.

But the total number of hours and fees incurred that the attached records show do not match the 102.2 hours to which Mr. Cronenwett attests. Rather, on the Court's review, the billing records reflect 27.9 hours billed by attorneys at an hourly rate of $275 (for a total of $7,672.50); 31.1 hours billed by attorneys at an hourly rate of $300 (for a total of $9,330.00); 13 billed by paralegals at an hourly rate of $85 (for a total of $1,105.00); and 21.2 hours billed by paralegals at an hourly rate of $95 (for a total of $2,014.00) – for a total of 59 attorney hours and 34.2 paralegal hours and an overall total billed time of 93.2 hours. But the Court's review of the fees billed in the records still adds up to $20,121.50, which is the total amount to which Mr. Cronenwett attests and that BNYM's motion itself requests in fees.

Accepting that the 102.2 hours to which Mr. Cronenwett attests was also a typographical error, and, having carefully reviewed the billing records, the undersigned finds that the 93.2 hours of attorney and support staff time – all time incurred in over roughly 14 months of litigation effort to achieve a victory for BNYM to defend against Plaintiff's claims and protect BNYM's its interest in certain real

property as a result of a default under the loan agreement – are reasonable and necessary and not excessive, duplicative, or inadequately documented and therefore were reasonably expended for tasks for which BNYM should be awarded its requested attorneys' fees.

The undersigned therefore finds the appropriate lodestar here to be calculated as BNYM requests as fees of $20,121.50 incurred for 59 attorney hours and 34.2 paralegal hours (and a total of 93.2 hours).

While the undersigned has considered the *Johnson* factors, the lodestar is presumed to be reasonable and should only be modified in exceptional cases. BNYM does not seek an enhancement of its attorneys' fees. And the undersigned finds that no enhancement is warranted under the circumstances and that there are no other exceptional circumstances.

BNYM also requests additional attorneys' fee if any party files a post-judgment motion or the case is appealed. But none of these conditions have occurred, and BNYM is not entitled to those fees at this point.

The Court should award BNYM its attorneys' fees in the lodestar amount of $20,121.50.

**Recommendation**

The Court should grant BNYM's Motion for Attorney Fees [Dkt. No. 33] and award BNYM attorneys' fees in the amount of $20,121.50.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these

findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. See *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: June 28, 2023

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE